McCoy *v.* Wilson.

Opinion delivered March 9, 1925.

Vendor and purchaser—waiver of forfeiture for non-payment.—
Proof that a vendor under contract of sale agreed to apply rents
as payments on the remainder of the purchase-money notes, that
he placed long-time mortgages on the lands thus preventing
the purchaser from borrowing money with which to make pay-
ments, and that he transferred the purchase-money notes without
offer to redeem them, *held* to sustain a finding that the vendor
waived a forfeiture of the contract for non-payment of the pur-
chase-money notes.

Appeal from Conway Chancery Court; *W. E. Atkin-
son,* Chancellor; affirmed.

*Edward Gordon,* for appellant.

There is no testimony on the part of the appellee
showing any willingness to perform, or any offer to per-
form, the contract, yet it is undisputed that the fourth
note, though past due, and the fifth note are unpaid. 5
Pomeroy, Equity Jurisprudence, 2nd Ed., p. 4982,
§ 2331; 118 Ark. 283; 6 Pomeroy, Eq. Jur, 805, § 809, 142
Ark. 530.

*Strait & Strait,* for appellee.

Equity does not favor forfeitures, and this is
especially true where the major portion of purchase
money has been paid. It is a settled principle of law,
also, that one cannot claim or enforce a forfeiture of a
contract caused or superinduced by misconduct on his
own part. 85 Ark. 599; 102 Ark. 157; 87 Ark. 600; 100
Ark. 565; 38 Ark. 285; 75 Ark. 410; 83 Ark. 524; 59 Ark.
405. See also 73 Ark. 415; 95 Ark. 567; 98 Ark. 328
86 Ark. 489.

Humphreys, J. The only question presented on this
appeal for determination is whether, under all the facts
and circumstances in the case, appellant waived his
right to declare a forfeiture under an executory con-
tract for the sale and purchase of 200 acres of land in
said county by appellant to appellee, Joe Wilson.

This suit was brought in the chancery court of Conway County by said appellee on December 13, 1921, to prevent appellant from declaring a forfeiture of the sale and purchase of said land, and after his death the cause was revived and proceeded to a hearing upon the testimony introduced by the respective parties, from which the court found and decreed the contract to be in full force and effect, and retained jurisdiction for the purpose of adjusting the equities between the parties.

The contract price for said lands was $2,000, payable in five annual installments of $400 each, evidenced by five promissory notes due serially on December 1, 1917, 1918, 1919, 1920 and 1921. It was provided in the contract that, "in case of default in the payment of either of said notes at maturity, then all the remaining unpaid notes shall become due and payable at once, at the option of the said T. K. McCoy. Provided also that, in case the said Joe Wilson shall fail to comply in full with the terms of the contract, then the amounts, if any, paid by him shall apply as rents on said lands. It being hereby agreed and understood that, in case of such failure on the part of the said Joe Wilson, the said T. K. McCoy shall be entitled to rent to the amount of one-third of all grain crops and one-fourth of all cotton crops grown on said lands each year during the life of this contract, and that this instrument shall operate as a lien on said crop to secure said rents; then in that event this contract shall be null and void."

Appellee made the payments for 1917, 1918, and 1919, with the interest, in the total sum of $1,385. In the year 1920 the crops failed, and no payments were made. The time for making the other payments was extended. In the year 1921 appellee paid $200 rent on the land. He became ill in the fall of that year, and died of tuberculosis on April 1, 1922. His widow and children continued to reside on the property, and paid $200 rent thereon in the fall of the year 1922. Appellee's widow testified that the rents were paid with the understanding between her

husband and appellant that they should be treated as payments on the land. She also testified that, in the fall of 1922, appellant rented the lands to other parties, thereby compelling her and the children to move. She also testified that the unpaid purchase money notes were assigned to the Morrilton Bank by appellant, and that he never offered them or the contract back to her husband or herself.

Appellant and his son testified that appellee was unable to keep up the payments, turned the land back, and thereafter rented same.

G. M. Conley testified that appellant told him, in 1922, that he had agreed with appellee in 1920 to grant him more time; that he said the Bank of Morrilton had agreed to carry him and that he had agreed to carry appellee. Witness asked appellant why he declared a forfeiture of the contract if he agreed with appellee to extend the time, and his reply was, "A verbal contract don't amount to nothing."

Appellant's contention for a reversal of the decree is that appellee breached the contract by failing to make the last two payments, and he had an absolute right to declare a forfeiture, apply the payments made of $1,385 as rent, and to keep the land. His right to do this was, perhaps, absolute unless he had waived such right by his acts and conduct, when considered in the light of all the facts and circumstances in the case. We think the instant case is covered by the following rule of law announced in the case of *Little Rock Granite Co.* v. *Shall,* 59 Ark. 405, and reaffirmed in the cases of *Land* v. *May,* 73 Ark. 415; *Cherokee Construction Co.* v. *Bishop,* 86 Ark. 489; *Cooley* v. *Lovewell,* 95 Ark. 567; *Kampman* v. *Kampman,* 98 Ark. 328.

"Where there has been a breach of a contract sufficient to cause a forfeiture, and the party entitled thereto either expressly or by his conduct waives it, equity will relieve the defaulting party from the forfeiture."

While the testimony of appellant and his son was to the effect that appellee surrendered his right as a pur-

chaser under the contract in the fall of 1920, the testimony of appellee's widow and G. M. Conley was to the effect that he waived his right to declare a forfeiture, and agreed to apply the rents to be paid after 1920 to the last two payments. In view of the fact that $1,385 of the purchase money had been paid by appellee, and that appellant had placed long-time mortgages upon the land, which had the effect of preventing said appellee from borrowing money with which to make the last payments, it is reasonable and probable that further time was given to make the last payments, with the understanding that the rents should be treated as payments on the purchase money notes. In addition, the fact exists that appellant transferred the purchase money notes to the bank and never redeemed or offered to redeem them and tender them and the contract back to appellant. This fact strongly corroborates the testimony of Mrs. Wilson and Mr. Conley. We cannot say that the finding of the chancellor was contrary to the weight of the evidence. On the contrary, we are of the opinion that, according to the weight of the evidence, appellant waived a forfeiture of the contract.

The decree therefore is affirmed.